**UNITED STATES of America, Plaintiff,**

v.

**Dean Allen PHELPS and Chauncey Taylor, Defendants.**

**Cr. No. 83–30.**

United States District Court,
E.D. Kentucky,
Covington Division.

Oct. 13, 1983.

James E. Arehart, Asst. U.S. Atty., Lexington, Ky., for plaintiff.

David Davidson, Covington, Ky., for Taylor.

Bruce Whitman, Cincinnati, Ohio, for Phelps.

## OPINION

BERTELSMAN, District Judge:

This memorandum is written to explain certain evidentiary rulings made by the court during the trial of the above case.

The case arises out of the prosecution of the defendants for willful possession of 169 pounds of marijuana and a pound and-a-half of cocaine with intent to distribute, which conduct is prohibited by 21 U.S.C. § 841(a)(1). A brief recitation of the facts is necessary so that the reader may place the rulings of the court in context.

Certain officers of the Kenton County, Kentucky, Sheriff's Department and Dixie Police Authority were conducting a stake-out in the hope of serving some warrants.

The stakeout was in a mobile home park in Kenton County, Kentucky. The officers observed the defendants enter the mobile home park in a Lincoln Continental automobile. After behaving suspiciously, the defendants parked the car and went into one of the mobile homes. Subsequent observation and investigation by the officers revealed that the automobile bore a Florida license plate, which a radio inquiry revealed was registered to Budget Rent-a-Car.

Certain communications back and forth between the officers and the officials of Budget in Florida resulted in the officers' ascertaining that the automobile was two days overdue and under its rental contract should not have been driven outside of Florida. After several telephone calls over a period of an hour-and-a-half to two hours, Budget instructed the officers to take the car into their possession and return it to Budget.

The officers then knocked on the door of the mobile home, which the defendants had entered and told the defendants that Budget had instructed the officers to repossess the automobile, because it was overdue.

Further conversations and delay ensued while the defendants attempted to contact Budget to procure an extension on the rental contract. These efforts proved unsuccessful and the officers informed defendants that, although they were not under arrest, and the officers were not treating this car as a stolen vehicle, they were going to take it into their possession upon the instructions of Budget, its owner.

The officers then requested the defendants to remove any personal belongings of theirs from the automobile. In the process of accomplishing this, the illicit drugs were discovered in the trunk of the vehicle. There were several large bales of marijuana, the nature of which was obvious upon the officers' opening the trunk. In addition, more than a pound of cocaine was found in a satchel or gym bag, also located in the trunk.

It is at this point that the events occurred which gave rise to the rulings discussed in this opinion.

At a bench conference, counsel for defendant Phelps advised the court that he was going to seek to introduce through the testimony of one of the officers, that, when the officers discovered the cocaine in the gym bag, Phelps had stated, "That is my gym bag, but Taylor put it in the trunk."

The unusual feature concerning the introduction of this statement was that the statement was sought to be introduced by Phelps himself and the objection to the testimony was made, not by the United States, but by the co-defendant Taylor.

The stated ground of the objection was that it constituted hearsay and would violate Taylor's rights under the confrontation clause, the court having been advised that Phelps did not intend to take the stand on his own behalf.

Phelps' response to these objections was that the matter constituted an admission or came under the present sense exception of F.R.Ev. 803(1), or the excited utterance exception of F.R.Ev. 803(2). That these were well recognized hearsay exceptions was sufficient, Phelps argued, to satisfy the confrontation clause. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

Analysis of the situation revealed that the proffered testimony was indeed hearsay and that neither of the two exceptions mentioned above were applicable. Therefore, it was not necessary to consider the confrontation problem, since the testimony was not admissible.

■ Although the proponent of the testimony was the declarant himself, the testimony constituted hearsay under F.R.Ev. 801, which states in part:

"(c) **Hearsay.** 'Hearsay' is a statement, other than one made by the declarant *while testifying at the trial or hearing,* offered in evidence to prove the truth of the matter asserted." (Emphasis added.)

Although the defendant-declarant was present in the courtroom, he was not on the stand testifying as to the statement, and

the proffered declaration was therefore an out-of-court statement subject to a hearsay objection.

■ Further, it is equally clear that the statement was not excluded from the definition of hearsay by the fact that it was an admission. F.R.Ev. 801 provides concerning admissions:

"(d) **Statements which are not hearsay.** A statement is not hearsay if

\*   \*   \*   \*   \*   \*

"(2) **Admission by party-opponent.** The statement is offered *against a party* and is (A) his own statement, in either his individual or a representative capacity ..." (Emphasis added).

The statement of a party may be introduced as an admission only when offered *against* that party. *See U.S. v. Sanders,* 639 F.2d 268 (5th Cir.1981); *Auto-Owners Insurance Company v. Jensen,* 667 F.2d 714, 722 (8th Cir.1981). This principle is reflected by the standard but often unanalyzed objection that such testimony by a party constitutes a "self-serving declaration." 6 J. Wigmore, *Evidence* § 1732 (1976). Some confusion arises by reason of the fact that, to be admissible, a party's out-of-court statement need not have been against his interest when made. But it may not be offered in his *favor,* but only *against* him. *Auto-Owners Insurance Company v. Jensen, supra.*

It was necessary then to turn to the two hearsay exceptions relied on by the proponent. Even a cursory reading of F.R.Ev. 803(1) shows it is not applicable.

"**Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial.**

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(1) **Present sense impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

■ The proffered statement could not be considered a present sense impression under Rule 803(1), because the subject matter of the statement offered was not what the declarant was presently perceiving when the statement was made, but rather something which had occurred at a remote previous time, namely whenever the gym bag was placed in the trunk. The primary guaranty of trustworthiness underlying this exception is the "substantial contemporaneity" of event and statement. Therefore, "It should be noted that the exception is limited to statements made while an event or condition is perceived or immediately thereafter. The theory of the Rule will not support a substantial time interval between event and statement." S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 574 (3d ed. 1982). This substantial contemporaneity is lacking here.

■ The argument based on the excited utterance exception presented a more difficult problem. F.R.Ev. 803(2) defines excited utterances thus:

"(2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The court, however, concluded that that exception was not applicable, for the following reasons.

The court, as is the recommended procedure, conducted a hearing out of the presence of the jury as to the qualification of the statement as an excited utterance, pursuant to F.R.Ev. 104(a). 4 Louisell & Mueller, *Federal Evidence* § 439, at 509 (1980).

The factor of trustworthiness underlying the excited utterance exception is spontaneity. *See* S. Saltzburg & K. Redden, *op. cit., supra,* at 574. Therefore, one of the factors the court considered was the fact that the events causing the alleged excitement of the declarant (the officers having discovered the contraband in the trunk) was not the subject matter of the statement, which concerned the previous event of the bag's being placed in the trunk. As has been stated:

" 'It should be kept in mind that as soon as the excited utterance goes beyond description of the exciting event and

deals with past facts or with the future it may tend to take on a reflective quality and must be more carefully scrutinized with respect to the second element, that of true spontaneity. In other words, the very fact that the utterance is not descriptive of the exciting event is one of the factors which the trial court must take into account in the evaluation of whether the statement is truly a spontaneous, impulsive expression excited by the event.'

\* \* \* \* \* \*

"... the relationship of the statement to the startling occasion may properly be taken into account as one of the many factors which bear upon the question whether the utterance satisfies the true requirements of the exception, which are that there be an occasion which startles the declarant and that the utterance express the declarant's spontaneous reaction to the occasion." Louisell & Mueller, *Federal Evidence,* pp. 514–515, quoting *Murphy Auto Parts Co. v. Ball,* 249 F.2d 508, 509–11 (D.C.Cir.1957), *cert. den.* 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415.

An additional factor considered by this court was that from the time the officers had knocked on the trailer door and indicated their intention to take possession of the rented automobile on behalf of its owner, the defendant-declarant had approximately an hour and-a-half during which he would have known that it was extremely likely that the contraband would be discovered somewhere in the course of events. This opportunity to reflect and fabricate an explanation also detracts from the trustworthiness of the excited utterance, which is the element that forms the primary reason for making such utterances hearsay exceptions. 4 Weinstein, *Evidence* ¶ 803(2)(01) at 803–84 n. 24 (1981). That the opportunity to reflect occurred before rather than after the alleged exciting event is not determinative.

This court also took into consideration that the Rule 104(a) inquiry revealed that the officer on whose testimony the proponent of the evidence relied to establish the

statement as an excited utterance indicated considerable skepticism as to the genuine excitement of the defendant-declarant at the time of the statement. Louisell & Mueller, *op. cit., supra* at 510.

Considering all of these factors, the court determined that the proffered statement was not properly to be considered as an admission, a present sense impression or an excited utterance. Therefore, the court sustained the objection and excluded the testimony.